IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MIGUEL A. QUINNONES, | : | |
| Plaintiff | : | |
| v. | : | CIVIL NO. 4:CV-14-1059 |
| SCI-HUNTINGDON ADMINISTRATION, ET AL., | : | (Judge Brann) |
| Defendants | : | |

**MEMORANDUM**

September 6, 2016

**Background**

Miguel A. Quinnones, an inmate presently confined at the State Correctional Institution, Somerset, Pennsylvania (SCI-Somerset) filed this pro se civil rights action. By Order dated March 31, 2015, Plaintiff's amended complaint (Doc. 17) was accepted and the claims against Plaintiff's prior place of confinement, the State Correctional Institution Huntingdon, Pennsylvania (SCI-Huntingdon) Administration were deemed withdrawn.

Named as Defendants are the following SCI-Huntingdon officials: Superintendent Bickell, Deputy Superintendent R. Moore, Unit Manager Cook,

1

and Security Captain Harris. According to the Amended Complaint, the Defendants failed to protect Quinnones from being attacked by another inmate. Specifically, on January 13, 2014, Plaintiff allegedly informed Unit Manager Cook that a threat to his life existed in general population. See Doc. 17, ¶ 9. As a result, Quinnones was moved to the prison's Restricted Housing Unit (RHU) and placed on administrative custody status.

The next day, Quinnones asserts that he told Security Captain Harris that a prisoner, whose name he did not know, wanted to harm him. On January 15, 2014, Plaintiff purportedly met with a Program Review Committee (PRC) consisting of Defendants Moore and Cook as well as Deputy Superintendent Eckard. Quinnones explained that he was in fear for his life because he had received information that "someone supposed to have paid" another general population prisoner to hurt him. Id. at ¶ 14. The PRC agreed to leave Plaintiff in administrative custody until February 12, 2014. Later that evening, however, Quinnones was allegedly returned to general population.

On January 29, 2014, Plaintiff avers that he requested a transfer due to the same safety concerns. The Amended Complaint next asserts that Quinnones was removed from the RHU and placed back into general population for a second time by Defendants Harris and Moore. However, Quinnones maintains that he returned

to the RHU on self lock up after advising prison staff that he received another threat of imminent assault.

On March 7, 2014, Plaintiff claims that he was again released from the RHU by Deputy Superintendent Moore pursuant to a recommendation by Captain Harris. See id. at ¶ 21. Quinnones thereafter purportedly submitted written statements to the prison's security office and Superintendent Bickell stating that he was scared that someone was going to harm him.[1] He was temporarily returned to the RHU.

On April 10, 2014, Plaintiff contends that an unidentifed prisoner attacked him with a razor. See id. at ¶ 25. He allegedly suffered a facial laceration near his chin that left a scar. Following this incident, Plaintiff was returned to administrative custody for his own protection where he apparently remained until his transfer to another correctional facility. Quinnones's pending action seeks declaratory relief as well as punitive and compensatory damages.

Presently pending is Defendants' motion seeking entry of summary judgment. See Doc. 33. A review of the docket entries shows that the motion is unopposed.

---

[1] Plaintiff's correspondence noted that he kept on going back and forth to the RHU because of his fears of being harmed.

**Discussion**

Defendants acknowledge that while confined at SCI-Huntingdon from January-March, 2014 the Plaintiff made a series of complaints to prison officials expressing fear for his safety. As a result of those complaints, Quinonnes had three separate RHU placements (January 15, 2014, January 22, 2014, and February 25, 2014) during the relevant time period. Plaintiff was eventually released back to general population when his safety concerns could not be substantiated via internal investigations.

On April 10, 2014 (eight days after being released from administrative custody), Plaintiff alleged that he had been assaulted, specifically, that he was cut with a razor in the prison dining hall. He was treated for s superficial cut near his chin which required a butterfly band aid. Defendants note that Quinnones provided conflicting version as to why he was being targeted and could not provide officials with the name of his alleged assailant or any witnesses to that incident.

Defendants claim that they are entitled to entry of summary judgment on the grounds that Plaintiff failed to exhaust his available administrative remedies and his amended complaint fails to establish that they were deliberately indifferent to

4

an excessive risk to his safety.[2]

**<u>Standard of Review</u>**

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>See</u> <u>also</u> <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. <u>Id</u>. at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. <u>Saldana</u>, 260 F.3d at 232; <u>see</u> <u>also</u> <u>Reeder v. Sybron Transition Corp.</u>, 142 F.R.D. 607, 609 (M.D. Pa. 1992). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. <u>Versarge v. Township of Clinton</u>, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to

---

[2] A prison official violates the Eighth Amendment when he acts with deliberate indifference to a known objectively serious risk to a prisoner's safety. <u>See</u> <u>Beers-Capitol v. Whetzel</u>, 256 F. 3d 120, 125 (3d Cir. 2001).

5

support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. (internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." Celotex, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" Saldana, 260 F.3d at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**Administrative Exhaustion**

Defendants' first argument contends that although Quinnonnes filed two grievances "that might be construed to relate to his claims," neither was properly exhausted. Doc. 35, p. 8. As previously noted, this argument is unopposed.

In support of their argument Defendants have provided declarations under penalty of perjury by SCI-Huntingdon Grievance Coordinator Connie Green

6

(Doc. 36-13); SOIGA Grievance Review Officer Amanda West (Doc. 36-16); and copies of the relevant grievances, filings, and responses. Also submitted for consideration are copies of the relevant DOC grievance system policies.

Section 1997e(a) of title 42 U.S.C. provides:

> No action shall be brought with respect to prison conditions under Section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Section 1997e(a) requires administrative exhaustion "irrespective of the forms of relief sought and offered through administrative avenues." Porter v. Nussle, 122 S.Ct. 983, 992 (2002); Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001). Claims for monetary relief are not excused from the exhaustion requirement. Nyhuis v. Reno, 204 F.3d 65, 74 (3d Cir. 2000). Dismissal of an inmate's claim is appropriate when a prisoner has failed to exhaust his available administrative remedies before bringing a civil rights action. Ahmed v. Sromovski, 103 F. Supp. 2d 838, 843 (E.D. Pa. 2000). "[E]xhaustion must occur prior to filing suit, not while the suit is pending." Tribe v. Harvey, 248 F.3d 1152, 2000 WL 167468, *2 (6th Cir. 2000)(citing Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999)); Oriakhi v. United States, 165 Fed. Appx. 991, 993 (3d Cir. 2006).

The United States Supreme Court in Jones v. Bock, 549 U.S. 199 (2007), stated that the primary purpose of the exhaustion requirement is to allow "a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." Id. at 219. The administrative exhaustion mandate also implies a procedural default component. Spruill v. Gillis 372 F.3d 218, 222 (3d Cir. 2004).

As explained by the United States Court of Appeals for the Third Circuit, a procedural default rule "prevents an end-run around the exhaustion requirement." Id. at 230. It also ensures "prisoner compliance with the specific requirements of the grievance system" and encourages inmates to pursue their administrative grievances "to the fullest." Id. Similarly, the Supreme Court has observed that proper exhaustion of available administrative remedies is mandatory, meaning that prisoners must comply with the grievance system's procedural rules, including time limitations. Woodford v. Ngo, 548 U.S. 81 (2006).

A Consolidated Inmate Grievance Review System has been established by the Pennsylvania Department of Corrections ("DOC").[3] Section V of DC-ADM 804 (effective May 1, 2014) states that "every individual committed to its custody

---

[3] The DOC's grievance system has been periodically amended.

shall have access to a formal procedure through which to seek the resolution of problems or other issues of concern arising during the course of confinement." Doc. 36-12, p. 2. It adds that the formal procedure shall be known as the Inmate Grievance System and provides a forum of review and two (2) avenues of appeal. After attempted informal resolution of the problem, a written grievance may be submitted to the Facility Grievance Coordinator within fifteen (15) working days after the events upon which the claims are based, but allowances of extensions of time will be granted under certain circumstances.

An appeal from the Grievance Coordinator's Initial Review decision may be made in writing within fifteen (15) working days to the Facility Manager or Superintendent. A final written appeal may be presented within fifteen (15) working days to the Secretary's Office of Inmate Grievances and Appeals (SOIGA). A prisoner, in seeking review through the DOC grievance system, may include reasonable requests for compensation or other legal relief normally available from a court. However, an improperly submitted grievance will not be reviewed.

Based upon Green's unopposed declaration, Plaintiff filed two grievances relating to the claims set forth in this action. Grievance No. 502483 was initiated on March 19, 2014 (prior to the alleged April 10, 2014 assault) and challenged a

misconduct charge which had been issued to the inmate for refusing to lock up.[4] Defendants have provided the Court with a copy of the grievance. See Doc. 36-9. Therein, Plaintiff asserted that he refused to be locked into his cell because he felt that his safety was in danger.  The grievance was rejected because since it addressed the validity of a misconduct charge the matter had to be addressed through the DOC's inmate discipline policy. See id.  Green clearly states that no administrative appeal of the rejection was pursued. See Doc. 36-13, ¶ 16

   Grievance No. 505257 was initiated by Plaintiff following the assault and requested that the incident be investigated and again asserted that he was in danger. See  Doc. 36-10. Green notes the matter was assigned to Major Wakefield, a non-defendant, for a response. See id. at ¶ 18.  The grievance was denied at the initial level because Quinnones could not identify his assailant, provide any witnesses; the actions taken by prison staff were found to be appropriate under DOC policy.  Furthermore, the response noted that Plaintiff was transferred back to the RHU after he reported the alleged attack and the matter remained under review.  The denial of the grievance was not properly appealed to the prison Superintendent.

---

   [4] A copy of the misconduct charge issued March 7, 2014  has been submitted to this Court.  See  Doc. 36-8.

Green clarifies that a vague request slip from Quinnones to the Superintendent was returned to Plaintiff with a note informing him that if he wished to pursue an appeal to the Superintendent of Grievance No. 505257 it needed to be clearly marked as such. See id. at ¶ 26. No such appeal to the Superintendent was ever initiated.

SOIGA Review Officer West's declaration states that the only correspondence Plaintiff sent to SOIGA during the relevant time period was a document dated May 14, 2014. Quinnones' submission was construed as an improper initiation of an appeal of Grievance No. 505257 given that the inmate had bypassed the initially required appeal to the SCI-Huntingdon Superintendent and also because he had failed to include required documentation. See Doc. 36-16, ¶ 16. West adds that although Plaintiff was provided with the reasons for the rejection of his SOIGA filing he "never filed a proper appeal of Grievance No. 505257 to SOIGA." Id. at ¶ 16.

The undisputed record establishes that the DOC had an established grievance procedure in place at SCI-Huntingdon during the relevant time period. Second, Plaintiff was aware of the procedure and pursued grievances. Third, Quinnones failed to initiate proper administrative appeals of any grievance relating to any of his pending claims. Based upon those factors as well as Plaintiff's

11

failure to oppose the request for summary judgment, a finding of non-exhaustion and entry of summary judgment in favor of Defendants under the well settled Spruill and Woodford standards is appropriate.

**Conclusion**

Pursuant to the above discussion, it has been determined that the Defendants' unopposed request for of summary judgment should be granted on the basis of non-exhaustion.   In light of that conclusion, a discussion of the Defendants' additional argument of failure to set forth a viable unconstitutional deliberate indifference claim is not required.   An appropriate Order will enter.


                    BY THE COURT:

                    s/ Matthew W. Brann
                    Matthew W. Brann
                    United States District Judge